IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT L. HINCHEY, SR.,**                          CV. 6:11-cv-00167 RE

Plaintiff,                          **OPINION AND ORDER**

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

Defendant.

**REDDEN**, Judge:

Plaintiff Robert Hinchey brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

/ / /

1  - OPINION AND ORDER

## BACKGROUND

Born in 1961, Hinchey completed the tenth grade and has worked as a mechanic. Tr. 237-39. In February 2006, Hinchey filed an application for disability insurance benefits alleging disability since July 30, 2004, due to right leg, right hip, and back pain. His application was denied initially and upon reconsideration. In February and June, 2009, hearings were held before an Administrative Law Judge ("ALJ"). In a decision dated August 11, 2009, the ALJ found Hinchey not disabled. Hinchey's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Hinchey had medically determinable severe impairments of the residuals of a right tibia fracture, inlcuding post-traumatic degenerative joint disease of the right knee, depression, and a personality disorder. Tr. 18.. The ALJ found that these impairments did not meet or medically equal a listed impairment. Tr. 20.

The ALJ determined that Hinchey retained the residual functional capacity to perform a limited range of light work, with frequent lifting of 10 pounds and occasional lifting of fifteen pounds. Tr. 21. The ALJ found that Hinchey cannot sit for more than one hour at a time or more than six hours in an eight-hour day. He is limited to no more than one half hour standing and not more than two blocks of walking. Hinchey is capable of pushing and pulling twenty pounds of force for five minute periods. He is not able to perform work involving ongoing contact with the public, coworkers, or supervisors. The ALJ found Hinchey able to perform work that accommodates moderate limitations in concentration and stamina.

The ALJ determined that Hinchey was unable to perform his past relevant work. At step five, considering Hinchey's age, education, work experience, and residual functional capacity, the ALJ found that he can perform other jobs, including electronic assembler, production assembler, escort vehicle driver, and outside deliverer. Tr. 28.

The medical records in this case accurately set out Hinchey's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Hinchey contends that the ALJ erred by: (1) finding that his psychological impairments did not meet or equal a Listing; (2) improperly rejecting the opinions of lay witnesses; (3) failing to develop the record as to mental impairments; (4) failing to call a medical expert; and (5) failing to comply with SSR96-8P.

## I. The Listings

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" ("The Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

Plaintiff argues that the ALJ erred by failing to find that his depression, anxiety, and insomnia meet or equal the requirements of the Listings. Counsel does not identify which Listing plaintiff allegedly meets, but does make passing reference in her Statement of Facts to testimony regarding Listings 12.04, 12.06, and 12.08. Plaintiff's Opening Brief, p. 12. Listing 12.04 addresses depression. The required level of severity is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the following:
> a.. Anhedonia or pervasive loss of interest in almost all activities; or
> b.  Appetite disturbance with change to weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> i. Hallucinations, delusions, or paranoid thinking;

. . .

AND

B.  Resulting in at least two of the following:
1.  Marked restriction of activities of daily living; ;or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration,
persistence, or pace; or
4.  Repeated episodes of decompensation, each of extended
duration.

OR

C.  Medically documented history of a chronic affective disorder of at
least 2 years' duration that has caused more than a minimal
limitation of ability to do basic work activities, with symptoms or
signs currently attenuated by medication or psychosocial support,
and one of the following:

. . .

3.  Current history of 1 or more years' inability to function outside a
highly structured living arrangement, with an indication of continued
need for such an arrangement.

John Garner Nance, Ph.D, testified at the June 2009 hearing that he had reviewed

plaintiff's medical records and found slight restrictions of activities of daily living and social

functioning, and no episodes of decompensation. Tr. 85. He stated that he needed more

information as to concentration, persistence, and pace, and the ALJ ordered a consultative

psychological examination. Tr. 91.

On March 11, 2009, Barbara M. Gibby-Smith, Psy. D., conducted a Comprehensive

Psychodiagnostic Examination. Tr. 763-69. Dr. Gibby-Smith noted plaintiff's report of

"depression, extreme sadness, trouble concentrating, memory problems and a change in eating

habits." Tr. 766. Dr. Gibby-Smith's diagnostic impressions were Major Depression, with

overlaying Dysthymia; Generalized Anxiety Disorder; Conduct Disorder, Adolescent Onset

Type; features of Schizotypal Personality Disorder, post surgery right leg and knee; migraines,

arthritis, and carpal tunnel. Tr. 769. She assessed a Global Assessment of Functioning

("GAF")score of 60[1], indicating moderate symptoms. *Id.* Dr. Gibby-Smith does not find the

marked limitations required to equal or meet the Listing. She found plaintiff has functional

limitations of moderate limitations of remembering and understanding of complex instructions,

and carrying out complex instructions, and the ability to make judgments on complex work-

related decisions. Tr. 759. Dr. Gibby-Smith found plaintiff is moderately limited in his ability to

interact appropriately with the public, co-workers and supervisors, and moderately impaired in

his ability to respond to usual work situations and to changes in a routine work setting. Tr. 760.

Cheryl S. Brischetto, Ph.D. conducted a neuropsychological screening of plaintiff on July

13, 2009. Tr. 781-91. Hinchey reported smoking marijuana daily. Dr. Brischetto's diagnostic

impression was Major Depression, Recurrent, Moderate, r/o Dysthymia, Cannabis Dependence,

Personality Disorder NOS: antisocial and possible schizotypal features. Dr. Brishchetto's

opinion does not provide evidence that meets or equals the severity required by the Listings.

---

[1]    2 The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations. *Id* at 34. A Global Assessment of Functioning ("GAF") score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Id* at 32.

6 - OPINION AND ORDER

Dr. Brischetto opined that plaintiff is moderately limited in his ability to remember and understand complex instructions, to carry out complex instructions, and the ability to make judgments on complex work-related decisions. Tr. 771-72.

The ALJ's determination that plaintiff's mental limitations did not meet or equal a Listing is supported by substantial evidence.

## II. Lay Witnesses

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible when the lay testimony repeats the limitations expressed in the claimant's testimony. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). *See, Molina v. Astrue,* ___F.3d ___, 2012 WL 1071637 (C.A.9(Ariz.)).

## A. Dan Gladden

Mr. Gladden testified that he has known Hinchey for 23 years, and that he sees him two to seven times a week. Tr. 76. Hinchey has trouble walking, his knee gives out on him, and he stumbles and falls. According to Mr. Gladden, Mr. Hinchey can walk four to five blocks before resting. Tr. 77. Hinchey drops small items like silverware and cups. He appears to be in

constant pain and does not have much stamina. Hinchey can mow a lawn for 20 to 30 minutes before resting for 30 to 60 minutes, and his pace is about 40 percent of a normal person's pace. He appears to be depressed, though he does not anger easily. When he does get angry, it can last for a couple of hours. He can't do anything over his head. Tr. 79.

## B. Darrell Lee Morgan

Mr. Morgan testified that he has known Hinchey for 18 years and sees him at least weekly. Tr. 79. Mr. Morgan testified that Hinchey stumbles "every once in a while," because his leg gives out on him. Tr. 80. He drops cups, glasses, and eating utensils, and appears to be in constant pain. Hinchey takes "three quarters longer to do anything." Tr. 81. He appears to be depressed, and is irritable. *Id.*

The ALJ noted the lay testimony and stated that it was not entirely consistent with the objective evidence and "does not establish that the claimant would be unable to perform the tasks outlined in the residual functional capacity." Tr. 27.

The ALJ found plaintiff limited to walking two blocks and should avoid ongoing contact with supervisors, coworkers and the public. Tr. 21. He found that Hinchey should be limited to work that allows for concentration and stamina limitations. *Id.*

Objective medical evidence contradicts the lay testimony of manipulative limitations. The ALJ noted normal wrist extension and flexion, and ulnar and radial deviation. The ALJ cited evidence that plaintiff could make a fist, and that the examining physician observed the claimant's hands and fingers to be callused and dirty, suggesting that he is able to use them. Tr. 19. As to the testimony regarding stumbling, the ALJ properly noted evidence that Hinchey has an abnormal gait. Tr. 19.

The ALJ properly rejected some of the lay testimony as contradicted by the objective medical evidence. In sum, the ALJ properly provided a detailed discussion of the lay witnesses' statements, and gave germane reasons for discounting them. *Lewis,* 236 F.3d at 512.

## III. Development of the Record

The ALJ in a social security case has an independent " 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' " *Smolen,* 80 F.3d at 1288 (quoting *Brown v. Heckler,* 713 F.2nd 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. *Id.* When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts. *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978). The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir. 1992). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen,* 80 F.3d at 1288. The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open to allow supplementation of it. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998).

Plaintiff contends that the ALJ should have ordered a consultation with a physician to accurately evaluate the condition of Hinchey's hands, and that failure to do so was error.

As the ALJ noted, the record contains at least three opinions in which plaintiff's hands are evaluated. In January 2005 treating physician Beals found Hinchey was capable of continuous hand/wrist work, grasping, fine finger manipulation, and frequent pushing and pulling. Tr. 641. In June 2006 Dr. Horner examined Hinchey and performed range-of-motion and grip strength testing, and concluded that there were no manipulative limitations Tr. 667-69.

Raymond Nolan, M.D, Ph.D., examined Hinchey in March 2009. Tr. 748-49. Dr. Nolan noted positive Tinel's bilaterally and full finger flexion. Hinchey was able to make a fist, there were no joint deformities, swelling, erythema or tenderness. "Some callus formation and dirt involving his hands/fingers consistent with manual labor activities." Tr. 749. Dr. Nolan diagnosed carpal tunnel syndrome, and stated that Hinchey should avoid frequent repetitive hand or wrist activity that might exacerbate the carpal tunnel syndrome.

The ALJ noted the carpal tunnel diagnosis, and determined that the claimant "does not have a severe impairment secondary to carpal tunnel syndrome." Tr. 19. The ALJ did not, as plaintiff asserts, deny that plaintiff has carpal tunnel syndrome. Plaintiff's Opening Brief, p. 26. Rather, he appropriately resolved the conflict in the evidence and reasonably found that plaintiff has no functional limitations arising from his carpal tunnel diagnosis.

**IV. Medical Expert Testimony**

Plaintiff argues that the ALJ erred by failing to call a medical expert to testify at the hearing. Plaintiff is incorrect. The ALJ called Dr. Nance to testify. Tr. 82-86. Plaintiff argues that there are unidentified medical reports that require additional explanation. Plaintiff's Opening Brief, P. 27. This court declines the invitation to identify those records for the plaintiff.

## V. **Residual Functional Capacity**

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

A claimant's RFC is an assessment of what a claimant can do in a work setting despite her mental or physical impairment. Here, the ALJ found Hinchey capable of performing a modified range of light work, with lifting, sitting, standing, walking, pushing and pulling restrictions. Tr. 21. In addition, the ALJ found that plaintiff would be able to perform work that would accommodate moderately limited ability to concentrate secondary to pain and reduced stamina from depression induced low energy. Tr. 21.

Plaintiff contends that the ALJ did not adequately consider evidence of anxiety, headaches, and insomnia, citing Dr. Gibby-Smith's report of plaintiff's reported symptoms. Plaintiff does not identify any functional limitations arising from anxiety, headaches or insomnia. The ALJ adequately addressed Dr. Gibby-Smith's finding that Hinchey had difficulty completing digits backwards by requiring work that accommodates limited concentration. As to headaches, the ALJ found the plaintiff not fully credible based on discrepancies between his reports to medical providers and his testimony. Tr. 22-23. The ALJ's determination of Hinchey's RFC is supported by substantial evidence.

/ / /

## CONCLUSION

For these reasons, the ALJ's decision that Hinchey is not disabled is based on correct legal

standards and supported by substantial evidence.    The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this ⁄6⁄ day of June, 2012.


_____
JAMES A. REDDEN
United States District Judge

12  - OPINION AND ORDER